Mr. Clerk, will you call the next case please? 312-0144, Eugene Sweeney v. John Sweeney, et al., Allen v. Brian Johnson v. Noah Hermans Sons, Inc., Appley, Michael Kraft, and Woods Basement Systems, Inc., Appley, John Wedmore. Okay, Mr. Johnson. May it please the Court, Counselors? Good afternoon, Justices. My name is Brian Johnson. I'm from Johnson, Muncie, Noble, and Peoria, Illinois. On behalf of the Plaintiff Appellants, the Sweeneys, we're fortunate today to have Mr. Sweeney and the audience today to join us. We're here today, the Sweeneys owned a piece of property outside of Brimfield, Illinois, and they hired Noah Herman and Sons, which is a residential contractor in Peoria, Illinois, to hire or to build their residence, a residence being completed in 1995. The Sweeneys started to have problems with their residence. For example, small cracks, doors swinging open. They didn't know what was causing these problems, so they contacted their contractor, Noah Herman and Sons, who repeatedly said that these were normal settlement. This was, like most homeowners, if you ask a contractor, they'll always say little cracks in your foundation here and there. That's attributable to settlement problems. Noah Herman and Sons repeatedly told them this was normal settlement and that they could fix these problems by caulking the cracks, repositioning the plates on the doors, and so on. This continued on for several years, each time Noah Herman and Sons kept saying that it's normal settlement. In 2003, these problems started to get worse. By mid-2003, with Noah Herman and Sons continuing to say that this is normal settlement problems, the Sweeneys thought that it might be more than just normal settlement, but didn't know what was causing these problems. In the Peoria, Illinois area, there's a lot of mine subsidence and soil differences and whatnot, but we didn't know what was causing these problems. The Sweeneys, therefore, sought the advice of independent people to help determine what these problems were. Was it soil? Was it mine subsidence? Was it an issue with construction? Just didn't know. All along the way, we do know, however, as it's undisputed, that Noah Herman and Sons continued to say that this was normal settlement. In November of 2003, still not knowing what the issues were, the Sweeneys contacted Woods Basement Systems, the other defendant in this matter, to install anchors to secure the structure to keep it from having further problems. As we'll later find out, Woods was unsuccessful and allegedly made the problems worse. These were anchors in the foundation? Anchors into the ground, and ultimately what we believe has solved the problem was that we had to drill so far down into the bedrock to install a different type of anchor by a different contractor. In September 2004, which we believe is the earliest that the statute of limitations could have run in this matter, part of the patio was removed from the house, and it was discovered for the first time that perhaps no rebar was placed in the foundation of the home. All along, Noah Herman and Sons still saying that this was normal settlement. Now, the Sweeneys therefore contacted Noah Herman and Sons, and they admitted for the first time that they never put rebar in the foundation. This surprised Mr. Sweeney, so he looked at his architectural drawings of the house and saw that there was supposed to be rebar in the foundation according to the architectural drawings. However, when he first compared those drawings at that time to the construction contractor's drawings, he noticed that there may not be continuous rebar in the foundation, which is exactly why at that time the contractor said, we don't put rebar in the foundation there. You're talking footings or walls? In the footings of the foundation of the house. The investigation thereafter continues now that we have an idea of what's going on. Prior to this time, this issue apparently was buried in concrete in the foundation of the house, so no homeowner could know what the problem exactly was. Matter of fact, as the record shows, we were still trying to figure out as far as 2008 to make sure where exactly the contractor didn't put rebar in the foundation, and that's at C708 of the record. The talks between the parties continue, and thereafter a lawsuit is filed in October of 2007. Two defendants to this lawsuit, the first against Noah Herman and Sons, basically for defective construction, and the second defendant against Woods Basement Systems for breach of their guarantee in their contract that they would fix the problem and they didn't. Now, this case, the two defendants took different paths in this case. For Noah Herman and Sons, they first moved to dismiss the complaint based upon 2615 on the pleadings. Now, that's important, and it will be important later on in this appeal when I get to the issues of how the trial court's order, we believe, was incorrect. That motion on the pleadings is granted with leave to refile, asking for more faxes to the discovery for the discovery rule of the statute of limitations. That's vitally important. Next was a 2619 motion to dismiss the complaint based upon statute of limitations, which was denied. So 615 was granted with leave to refile, and we did. 619 on the substance of the statute of limitations, denied. Discovery takes place, and therefore, or thereafter, a summary judgment motion was filed and granted. We did go through a couple of judge changes in this process, and this was the new judge that we just had gotten who granted the summary judgment. He stated that basically the starting of the discovery for statute of limitations could be determined as a matter of law, which is very difficult, which I'll get to. Woods, however, goes into arbitration. They had an arbitration clause in their contract. The Sweeneys suffered a loss in arbitration, three-day arbitration. The arbitrator gives a big award to Woods, including on attorney's fees, which is being appealed here, that award of attorney's fees. We filed a motion to vacate that award, saying that the arbitrator exceeded his powers. Woods didn't actually pay those attorney's fees. The issues weren't resolved the way the arbitrator asked that they be resolved, and basically that Woods would have a windfall of fees if this fees award was granted. That motion was denied. This appeal follows. The reason Woods' motion was denied was because the judge didn't think that any of the reasons that we cited, and I'll get to this in a little bit, fell within that statute. So we have an appeal here today against Noah Herman and Sons. The issue is whether the trial court erred in granting summary judgment in determining when the statute of limitations began to run as a matter of law. We all know summary judgment is granted when there's no genuine issue of material fact, and all inferences must be drawn in favor of the non-moving party. Of course, it's de novo review in this court. Fortunately, we have what I call a trifecta of cases to look at, two of them being Supreme Court cases in this state. DuPage County, Knox, and LaSalle are the three cases that we have cited in our position, that the statute of limitations runs in construction cases such as this, when a person knows or reasonably should have known of an injury, which I don't think there's any dispute that we actually knew an injury had occurred, and that it was wrongfully caused. As the LaSalle court says, it's not when it might be wrongfully caused, it's when we know it is wrongfully caused, or when a reasonable person should know it's wrongfully caused. That's the issue here. The issue of whether that can be determined as a matter of law is the issue. This is typically a question of fact. I've been actually in front of this court before on this, Justice Linton, last time I was in their shoes on this, and you said, isn't this typically a question of fact? And I had to say yes, because it is. It can, however, be a matter of law when two things are present, which neither of them are present here. There's no undisputed facts, and only one conclusion can be drawn from those undisputed facts. That's the situation they've cited. When we look at DuPage County and Knox College, those two cases, Illinois Supreme Court cases, similar cases, buried defect, it's latent, no homeowner could know what the problem was until something actually happened, and were given actionable reasons, non-actionable reasons, by the responsible party. For example, in DuPage County, a case I hesitate to say it's on point, but I'm going to say it's almost directly on point to this case. DuPage County was building an administration building. Construction started in 1969. They knew of issues as soon as construction was over. They didn't know what it caused them. They were given various reasons for these issues, and the contractor gave them various solutions. The suit was thereafter filed in 1982, several years after construction. The court in that case said it's possible that the suggestions of the architect, much like the suggestions of the contractor here, were adequate to keep a person from investigating further.  Almost the same situation in Knox College. Almost the same situation in LaSalle. If you go through the court's order, which we're really appealing the court's order here, if you go through the court's order, you find in their factual determinations, for example, in number two of their factual determinations, the plaintiff inspected the home. No, he didn't. The record shows that he only visited the home briefly and occasionally and took some pictures for his scrapbook. Visited the home and knew of defects or discontinuous footings in 1994, which is not true. The record shows, and any inferences must be drawn in the non-moving party, the record shows the first time he learned of discontinuous footings is in 2004 when he saw that there was no rebar because the architectural drawings actually showed rebar in the foundation, and that's what prompted him to call the contractor, and the contractor said, no, we don't put rebar there. Well, the architectural drawings show it, so then he looks at the contractor's drawings and sees for the first time. Matter of fact, we were still trying to determine as late as 2008 or 2009 where exactly they didn't put rebar in the foundation during the course of this lawsuit, trying to figure out just how bad this problem was. Items 3 through 5 of the order, I suggest the court look at pages 999, which is our motion to reconsider in this case to see where inferences were improperly drawn. Item 6, and this was the determining factor of the trial court. By 2003, the plaintiff affirmatively did not believe defendant's explanation. This comes out of a deposition where Mr. Sweeney says in the deposition that I no longer believe you. That was in 2003, and that's what the trial court glommed onto. What he said was, I no longer believe you that these are foundation issues. What he doesn't say is, I no longer believe that you're wrong and we know what the problem is. We still didn't know what the problem was, and no reasonable person could have known what the problem was. Just saying I don't believe you anymore is almost like the same plaintiff in DuPage County who knew of issues as soon as construction was finished saying, I don't believe you that these problems that we're having with the moisture are not, I don't believe your explanation. Still, a party has to know or reasonably should have known that they actually have a cause of action, which is the whole point behind the two-part test. If you take the defendant's position in this, you don't need a two-part test. You only need a one-part test that they have an injury, and that triggers a duty to investigate. In some cases, like the one case that they cite, which is the Elsa Benson case, they cite saying that this isn't the analogous case. Totally different fact scenario here. You have a contractor suing a subcontractor. What they don't go into was the prior case where the owner sued that same contractor years before, and that contractor knew what the problem was then. They were just waiting to see if they could win that before that first case, which is Playschool v. Benson, Playschool the toy company, 147 Illab 3rd 292. In the Elsa Benson case, basically they had, the plaintiff in that case basically had unclean hands. They just sat on the issue here and then sued years later. So as a matter of law, based upon the undisputed facts, only one conclusion could have been drawn. You knew of the problem back then. Counsel has two minutes. As to the burden argument, which is their other contention, defendant's other contention, Auster case is what was cited by the trial court and counsel in this. Auster, I propose to this court, doesn't even matter. That was an issue raised as to the pleadings of this case. As to the pleadings, the burden is, rightfully, on the party claiming discovery, us, that we have to plead enough facts for the discovery rule. That wasn't really even an issue at this point in litigation at the summary judgment stage. Trial court cites and says, you haven't met your burden. Well, we did back in 2615 when you tried to dismiss us then. And it was granted, and we refiled. So this entire case as to Noah, Herman, and Sons comes down to question of fact. All these inferences that were drawn against our client improperly, the fact that we raised these factual questions at the trial court on the ground that was just ignored. More than one conclusion can be drawn, but you don't need to even get to that because we have disputed facts. You only get to drawing a conclusion if all the facts are undisputed. We have disputed facts, and you can have more than one conclusion here. Now, as to Woods, which is the easier of the two, so I'll condense this. The issue there is whether the trial court should have reviewed the merits of our motion under 710 ILCS 5-12 or 5-13. In those statutes themselves, they say they give reasons why a trial court can review an arbitration award. For example, the arbitrator exceeded his powers, made an evident mistake or miscalculation, or decided issues not before the arbitrator. Those were the issues that we raised in our motion. And what the trial judge said there was our motion to strike or modify the arbitration is denied as none of the reasons set forth in our motion fall within those sections. Well, that's exactly what we were raising, but the trial judge never addressed it. As to Woods, we're not saying we should win that here. We're saying the trial court should consider it. At that point, all of the issues that were raised in counsel's brief become apparent, like is a burden met? Overturning an arbitration award is pretty difficult at the trial court level. We're asking for a shot at it. The same exact thing we're asking for in Noah Herman and Sons. There's a question of fact here, numerous questions of fact, which we've detailed in our briefs. And we want our shot in the trial court level. Thank you. Any questions? All right, thank you, Mr. Johnson. Thank you. And, Mr. Wendler? Yes, sir. You're going to have five minutes. Five minutes, I hope. And then Mr. Kraft will have ten. Right. Your Honor, please record people in the chamber. First of all, I know I represent Woods Basement Systems, and the work done on the property, I just have to correct, was peering because the movement was up and down. Wall anchors would be for horizontal. A quarter of the foundation was peered. First, in addition, I note that the brief filed by the appellant seems to argue Section 12A.3, which is vacate an award. Well, if they supported anything, it would be a 13A.2, which states an arbitrator's award on a matter not submitted can't correct without the merits of the decision. I have been unable to find any case in Illinois or anywhere else where an arbitrator's award was thrown out because of a problem with attorney's fees, with the exception of Hahn. And with the exception of Hahn was because it was basically some prejudicial conduct that took place outside the arbitration. There was an ex-party contact, information was put in, and that's why the judge in that case thought that, well, not only is the attorney's fees bad, because they weren't even provided for, but the process that they used to prove the attorney's fees, no knowledge to one side, indicated a vacate award. An arbitration award is valid and occurs. Judicial reviews are strictly limited. Courts and legislatures want these to be at an end, and a court has an obligation to uphold an award wherever possible. The whole theory behind arbitration is that it's an end, not a beginning. As far as I know, there are three ways to attack an award. There's a Section 12 under the Uniform Arbitration Act that deals with vacating. There's a Section 13 under the Uniform Arbitration Act that deals with modifying. And then there's a public policy argument that's been developed with regard to arbitrations under collective bargaining agreements. The plaintiffs claim that the arbitrator exceeded his powers under 12A3. There's a presumption that an arbitrator does not exceed their powers, and the arbitrator's decision can be illogical or inconsistent, and that is not enough to reverse the arbitration. There can be gross errors of judgment on law and fact, and that would not be enough to reverse an arbitrator's award unless that appeared on the face of the award. Arbitration is a voluntary act where the parties submit their dispute to an arbitrator, and they decide what issues are going to be addressed. I'm not going to try to repeat my brief, but on page three of my brief, I show there was an arbitration clause that allowed the award of attorneys fees, costs, expenses, and fees. It's clear on page five of my brief I cite the section of the award where the arbitrator reviewed and found the charges reasonable. Courts say that if the award is within the submission and not the result of dishonesty, then there have to be blatant errors to set the same aside. You can find the standard for that, I think, on page five cited in my brief. So there hasn't been any question that the decision wasn't valid. The appropriate findings were made in the award, and I guess this comes down to some feeling that how my client paid for their legal services or their expenses is somehow relevant to the arbitration agreement. The parties don't have to put in an arbitration agreement that attorneys fees, costs, expenses, and the cost of arbitration will be included therein. So anyway, it's some kind of argument, and I think they've mentioned subrogation, but there clearly wasn't any subrogation here. It was just a matter of, and the attorneys fees were approved and found reasonable. So it isn't like where you had a medical bill that they charged you $100 for, but you only had to pay $10. These fees were actually paid, and I contend that it doesn't matter who paid them or who gets reimbursed. This is all within the arbitrator's power. Counsel, that's one minute. That's all, any questions? Well, the fees were paid actually by the insurance, right? The fees, well, it depends. I mean, not all. Not all, but a large part, presumably. Well, actually, it isn't part of the brief, but actually probably about 60%, because this thing went on a long time before we ever went to court on it, and I handled doing a, I mean, there's a lot of history behind this before arbitration came up. But my point is, you know, it doesn't matter who pays the fees. Woods was there. We got an award for the fees. If Woods puts it in his pocket, it pays his insurance company. You know, the plaintiff didn't pay our premiums, and he won't pay our premiums next year either. And when there's a claim, costs go up. Anything else? I guess not. Thank you, Mr. Weissner. Mr. Kraft? Thank you. Thank you, Justices. May it please the Court, counselors, my name is Mike Kraft. I'm the Quinn Johnson Law Firm in Peoria. I represent the appellee, defendant, Noah Herman and Sons, the general contractor that built the residence in this dispute. Your Honors, the reason that we're here is we're trying to determine what the date is that the statute of limitations began. That's the issue with my client. A quick overview of my argument is, and it's extremely important, which was not addressed in Mr. Johnson's argument, is the statute of limitations and the statute of codes in this case and how it affects this case. Secondly, a quick analysis of the Knox College case, the reasoning that the Supreme Court uses in determining when that date starts as far as when the statute of limitations begins. Third, the actual admissions that have been made by the plaintiffs in this case as to their actual knowledge that there was something wrongfully causing these damages in the spring of 2003 and their admissions that they no longer believed any assurance by my client, if there were any made, as of spring of 2003 as well. And finally, that even if there weren't any of these admissions, that even if there wasn't actual knowledge of the wrongfully caused, there's a reason, there's subjective knowledge or constructive knowledge, and that's supported by the Elsa Benson case. Getting back to the statute of limitations, it's extremely important in this case because Mr. Johnson referred to the 2619 motion to dismiss in this case. Well, the only issue in that 2619 motion is there's a four-year statute of limitations and a ten-year statute of repose. They need to claim that discovery occurred sometime within ten years of the end of the contract being completed. That was in March of 1995. So all they have to do is claim that before March 2005, something occurred that is the reason why they discovered the defect in this case. And so they repled, and they said September 2004, just like Mr. Johnson says today, that they saw a tiny crack in a frost wall that even Mr. Sweeney and their expert both admit that there's not supposed to be rebar in the frost wall, but Mr. Sweeney thought there should have been rebar in that frost wall, in that little crack. Because of that, that's why they discovered this case. It had nothing to do with eight years of doors being out of whack, of hinges, hot tub being dislodged, a crack in the southwest basement corner in which they could put their finger between a floorboard. None of that was discovered. Now, what's important, though, is that there's also the four-year statute of limitations. And they filed suit October 5, 2007. So if they actually discovered it prior to October 5, 2003, their time bar. That issue was not before the court with the 2619 motion. And this is a perfect example of why this is a different case than the cases that Mr. Johnson cited. The Knox College case, DuPage County case, those are both motion-to-dismiss cases, 2619 cases. This is a summary judgment. What we have proven, only one conclusion, and the trial court was perfectly correct, one conclusion is that the discovery actually occurred before October 2003, and that was spring 2003. And I'll get to those admissions quickly, but the Knox College case... Now, how did he determine that? I'm sorry? How did he determine that? He determined that based upon the admissions of Mr. Sweeney himself and Mrs. Sweeney. In the brief, Your Honor, there are excerpts from deposition testimony. And Mr. Sweeney himself, in spring 2003, there was this large gap southwest basement corner, and what he described as major cracking on the outside bricks of the home, and he said it was almost instantaneous damage to the home. At that time, he calls my client and says, hey, we have this damage to the house, and allegedly my client says that's normal selling and such, and Mr. Sweeney says, no, I know something's wrong. I know something's really wrong. And that's his exact quote in the deposition testimony. He knew something was wrong. Something was wrong for years. Something was wrong. That's a different question. He stated that he knew something was wrong that was causing the damage to the house. That's why he was contacting my client, because there's damage to the house. He wants to know why it's being caused. Mrs. Sweeney also testified in deposition that she also said that that crack in the basement was at the point they knew that we can't rely on any assurances from Noah Herman any longer. We knew something is wrong here, that something needs to be fixed. At that point, those are admissions that they know something is wrong. And what's important is the Knox College case. In the Knox College case, they looked at the issue of the statute of limitations. They said there's a continuum here. One is, does it start when they see the damage? No. Does it start when the plaintiffs know of the specific wrongful conduct that they believe that the defendant did, or that they have a cause of action against the defendant? And they said, no, it doesn't occur at that point either. And it expressly states, expressly states, the Supreme Court says that it does not require the plaintiff to have knowledge of the specific wrongful conduct by the defendant or the actual cause of action. And that is what Mr. Johnson is arguing in this case. They're saying one thing, of all the damages and such, they're saying the small crack in September 2004 was what created this damage. This discovery. And it defies logic that one particular crack is the only thing that could be the discovery and the only thing that it actually is, it is evidence of when they got knowledge of the specific alleged wrongful conduct by my client and when they got knowledge of the alleged cause of action, which the Supreme Court in Isaac College says is not the time period in which the statute of limitations begins. It begins earlier than that, when they know that it's wrongfully caused. And when it's wrongfully caused, they have the duty of inquiry to determine what the cause is and to determine if there's a cause of action because of that. And the trial court was clearly correct in this case and there's only one conclusion that could be drawn from the evidence and that is in the spring of 2003 with all the damages that occurred and all the admissions that the plaintiffs made in this case, that the discovery occurred in the spring of 2003. And I will say that as far as fact number six in the summary judgment order, it states that by spring of 2003 the plaintiff affirmably did not believe defendant's explanation. That's admitted to by the plaintiffs in their brief, also in their motion for reconsideration to trial court. They're not disputing that they no longer assured, they no longer believed or relied upon those assurances. And that's important because the LaSalle County case and the Knox College case, as Mr. Johnson stated, specifically relied upon the fact that there were assurances by a third party that they relied upon and that caused them not to have further inquiry to determine if there's a cause of action. And in this case, the plaintiffs actually did inquire. They admit that before October that the window period started, they contacted three contractors to determine exactly what the cause was. And they actually contracted with the contractor and did the work in November, a year before they claimed that they even had the discovery occurred. So for those reasons, Your Honor, we're requesting that the summary judgment order granting summary judgment from my client be affirmed as well as the denial of the motion for reconsideration be affirmed as well. Thank you. Any questions? Thank you, Mr. Kraft. And Mr. Johnson, any rebuttal? Is this construction on reclaimed land, stripped land, or is it undisturbed land? This was, I believe, vacant land outside of Broomfield. Vacant. Right, and they built a home on it. So, I know in the minds of citants that was started, that was brought up, as the record shows, after 2004 when the issues as we wanted to know if this was just the rebar or if there were other issues going on. As the record, I believe, shows, we were working with the minds of citants. I forget the name of the group. They were a state entity. When we, because when the engineer, our expert first came out after we discovered that there was no rebar there, and there were a lot of issues there. And I don't believe this is in the record, so I don't want to go into it. But there was a lot going on there. As to Woods, we're saying we need to look at these statutes, but specifically say 5-12, when an arbitrator exceeds their powers, the ruling can be, or the award can be reviewed. 5-13, same with a miscalculation, mistake, or on issues not submitted to them. The Hahn case is a good example of where the trial court did review it and found that there was enough there to overturn the arbitration. So it can happen. The arbitration clause itself says that Woods was only entitled to its attorney's fees. Counsel has admitted R-17, lines 17 through 20, in the hearing on this, that it was paid by a third-party insurance company, not Woods. Whether it was all of it or some of it, who knows? Woods got some sort of windfall here. The arbitrator said it was based upon an expectation of repayment, but nothing was in evidence, including the insurance contract, to show they had an obligation to repay, or that there was a subrogation award there. In essence, the arbitrator enforced a subrogation right that we didn't even know if it was there or not in the insurance contract. But we're getting to the issue there, the ultimate issue of whether the trial, the issue really is whether the trial court can review this award, and they can on something like this. They should. Not just say, well, none of these issues fall within the permanent zones. There's a lot going on here. The issue is not determining the statute of limitations. The issue is whether the statute of limitations can be determined in this case as a matter of law. And the answer to that is no. This is a factual question here. With all of everything going on, this is a question of fact. It has to be. There's so much in the record which we've Well, yeah, you could have a homeowner who doesn't want to dig up their foundation, because they might not know there's an issue there. When you say there's this tiny crack, actually it was an inch and a half wide, you can stick your fingers in there and you don't see any rebar. You can't feel it. You look at the architectural drawings and say, there's supposed to be rebar there. You call your contractor, who all along has been saying this is just normal settlement, and now they're saying, oh, we never put rebar there. Elsa Benson was a perfect case of bad faith. If you want to go into bad faith, you should look at a contractor who knows that there's no rebar there. That could be the issue here, and they don't tell them, waiting for the statute of repose to run. On the issue of statute of repose, making this way too complicated. If you read that statute, you have this ten years, starting at the date the construction is completed. You have a four-year sliding scale that can run along this, and if you discover something, let's say in year nine, you have an additional three years after that ten year runs out to bring your case. That's the plain reading of that, and it makes sense. You've got ten years with a sliding scale on it. Tiny crack we talked about. Improper inferences all throughout that order.  because it's on a motion to dismiss. If that's true, then neither is the Oster case, which they're relying on heavily in their brief. Oster was a motion, a 2-6-15 motion to dismiss, which is a totally different standard than you have a summary judgment. A 6-19 motion, which these other cases, DuPage and Knox County and Sal were on, are similar to a motion for summary judgment. Almost the exact same standard. They're good cases. They're almost on point, if not directly on point, for this exact same scenario that's going on here. There's no way this is a question of law. Saying that you no longer believe their explanation Justice Slitton hit on the head, that doesn't automatically mean that you know that something was wrongfully caused, or you reasonably should have known something was wrongfully caused. That was the case in LaSalle, when given no one of our Supreme Court cases does the phrase might be wrongfully caused trigger the statute. That's what they say. Elsa Browning went over, totally different. Knox College starts with the premise when the statute of limitation runs as a question of fact. These repeated assurances put us square in the DuPage and Knox County case. Elsa Benson clearly doesn't even apply, although is a good example of when, as a matter of law, the statute can be determined. And there's other issues in the brief. Thank you. Thank you, Mr. Johnson, and thank you all for your argument today. We will take this matter under advisement and get back to you with a written decision within a short day. We'll now take a short recess for a panel discussion.